# IN THE UNITED STATES DISTRICT COURT

## DISTRICT OF MINNESOTA

| | |
|---|---|
| Charles F. Wachendorfer Consulting Group LLC D/B/A Decision Reflex Consulting and Charles "Chuck" Wachendorfer,<br><br>Plaintiffs,<br><br>v.<br><br>Think2Perform Exam Services Co. F/K/A THINK2PERFORM, Inc., Doug Lennick, and THINK2PERFORM, Inc.<br><br>Defendants. | Civil No. 0:25-cv-01298-PJS-EMB<br><br>**PLAINTIFFS' MEMORANDUM IN OPPOSITION TO DEFENDANT'S PARTIAL MOTION TO DISMISS PLAINTIFF'S FIRST AMENDED COMPLAINT** |

## TABLE OF CONTENTS

TABLE OF CONTENTS ..................................................................................2

TABLE OF AUTHORITIES ...........................................................................3

FACTUAL BACKGROUND ............................................................................7

   A.   Relationship of the Parties ......................................................................8

   B.   Timeline of Events ..................................................................................8

      1.   2020 – Drafting the Book's Manuscript .........................................8

      2.   2022 – Final Manuscript Delivered to Publisher .............................9

      3.   2023 – Publication of the Book .......................................................9

      4.   2024 – Copyright Filing ...................................................................9

LEGAL STANDARD ....................................................................................11

LEGAL ARGUMENT ...................................................................................13

   A.   Scope of the '834 Registration ..............................................................13

   B.   Lennick Should Not Be Dismissed Because Lennick Has Personal Knowledge of the Work, Co-Authored the Book, and Direct Involvement in the DMCA Action Taken....................................................................................................15

   C.   Claims 1 and 2 (Declaratory Judgement) Should Not Be Dismissed. ...................20

   D.   Claims 4 and 5 (Tortious Interference) Should Not Be Dismissed. .......................24

   E.   T2P Exam Services Can Be Dismissed Without Prejudice. ..................26

CONCLUSION..............................................................................................27

# TABLE OF AUTHORITIES

## CASES

*Ashcroft v. Iqbal*,
  556 U.S. 662 (2009) ...................................................................................11

*Bell Atlantic Corp. v. Twombly*,
  550 U.S. 544 (2007) ...................................................................................11

*Diagnostic Unit Inmate Council v. Motion Picture Association of America*,
  953 F.2d 376 (8th Cir. 1992) ......................................................................20

*Equity Tr. Co. Custodian ex rel. Eisenmenger IRA v. Cole*,
  766 N.W.2d 334 (Minn. Ct. App. 2009) .....................................................17

*Faibisch v. Univ. of Minn.*,
  304 F.3d 797 (8th Cir. 2002) ......................................................................11

*Feist Publications, Inc. v. Rural Tel. Servs., Inc.*,
  499 U.S. 340 (1991) ..............................................................................13, 14

*Hal Roach Studios, Inc. v. Richard Feiner & Co.*,
  862 F.2d 1542 (9th Cir. 1989) ....................................................................20

*HSK, LLC v. United States Olympic Comm.*,
  248 F. Supp. 3d 938 (D. Minn. 2017) .........................................................19

*Hyphy Music Inc. v. Tapia Sena*,
  No. 1:21-cv-00216-JLT-HBK, 2025 U.S. Dist. LEXIS 49438 (E.D. Cal. Mar 18, 2025)
  ....................................................................................................................20

*Imposter Pastor Movie, LLC v. Oliver*,
  No. 5:24-CV-00115-M, 2025 U.S. Dist. LEXIS 47424 (E.D.N.C. Mar 14, 2025) .......23

*Maytag Corp. v. International Union*,
  687 F.3d 1076 (8th Cir. 2012) ....................................................................19

*McClain v. Am. Econ. Ins. Co.*,
  424 F.3d 728 (8th Cir. 2005) ......................................................................12

*Md. Cas. Co. v. Pac. Coal & Oil Co.*,
  312 U.S. 27 (1941) ......................................................................................12

*MedImmune, Inc. v. Genentech, Inc.*,
    549 U.S. 118 (2007) ................................................................................12, 19

*Merrell v. Tice*,
    104 U.S. 557 (1881) ......................................................................................13

*Oskar Systems, LLC v. Club Speed, Inc.*,
    745 F. Supp. 2d 1155 (C.D. Cal. 2010) ..................................................14, 17

*Ransom v. VFS, Inc.*,
    918 F. Supp. 2d 888 (D. Minn. 2013) ..........................................................15

Rockney v. Blohorn,
    877 F.2d 637 (8th Cir. 1989)........................................................................18

*Steger v. Franco, Inc.*,
    228 F.3d 889 (8th Cir. 2000)........................................................................12

*Taylor Corp. v. Four Seasons Greetings, LLC*,
    403 F.3d 958 (8th Cir. 2005)..........................................................................6

United States v. Martin,
    337 F.2d 171 (8th Cir. 1964)........................................................................18

*Velvet Underground v. Andy Warhol Foundation for the Visual Arts, Inc.*,
    890 F. Supp. 2d 398 (S.D.N.Y. 2012) ..........................................................20

*Willia Dean Parker v. Sarah Hinton*,
    *No.* 22-5348, 2023 U.S. App. LEXIS 1931 (6th Cir. Jan 24, 2023) .............13

*Wilson v. Arkansas Dep't of Hum. Servs.*,
    850 F.3d 368 (8th Cir. 2017)........................................................................11

*Xerox Corp. v. Apple Computer, Inc.*,
    734 F. Supp. 1542 (N.D. Cal. 1990) .............................................................20

## STATUTES

15 U.S.C. §1127 .....................................................................................................15

17 U.S.C. §102 .......................................................................................................15

## OTHER AUTHORITIES

Fed. R. Evid. ........................................................................................................13

FRCP 12(b)(1) ....................................................................................................10

**INTRODUCTION**

This case is, at its core, a dispute between two former colleagues who are now competitors. For years, they worked together on the board of T2P, with Wachendorfer serving as Chief Operating Officer and Lennick as Chief Executive Officer. In 2020, Wachendorfer and Lennick, independent of their roles at T2P, began writing a leadership book which draws on widely known business principles, titled "*Don't Wait for Someone Else to Fix It: 8 Essentials to Enhance Your Leadership Impact at Work, Home, and Anywhere Else That Needs You*" (the "Book"). In 2020, neither Wachendorfer nor Lennick (collectively the "Parties") held a registered copyright on any of the materials included in the Book. From 2020 through 2022, substantive portions of the book were drafted, including commentary on general leadership concepts in the public domain such as the "acid test," the WDYWFY model, and the Goal Achievement Model. Dkt. No. 21 at ¶ 28. The book was then published by Wiley and Sons Publishing in 2023.

On January 8, 2024, Wachendorfer gave notice of his resignation from T2P to begin his own business, Decision Reflex Consulting. Dkt. No. 21 at ¶ 23. Shortly thereafter, on March 4, 2024, T2P filed the copyright involved in this dispute, U.S. Reg. No. '6834, which lists T2P as the author of the Work, and which T2P maintains the Work covers "underlying material" in the Book. Dkt. No. 21 at ¶ 43.

Following Wachnedorfer's resignation from T2P, Wachendorfer and Lennick engaged in licensing discussions regarding T2P's material. Dkt. No. 21 at ¶ 25. However, while licensing discussions between Wachendorfer and Lennick were still ongoing, and

up to the initiation of this suit, Lennick—through T2P—abruptly shifted course and has issued a series of meritless enforcement actions against Wachendorfer, claiming exclusive rights in material they had developed together or otherwise exists in the public domain. Lennick and T2P, now a direct competitor of Wachendorfer, are using the copyright system not to protect original creative work, but to suppress competition.

In 2020, Wachendorfer and Lennick, as individuals, began writing the book "*Don't Wait for Someone Else to Fix It: 8 Essentials to Enhance Your Leadership Impact at Work, Home, and Anywhere Else That Needs You*" (the "Book"). Dkt. No. 21 at ¶ 27. In 2020, neither Wachendorfer nor Lennick (collectively the "Parties") held a registered copyright on any of the materials included in the Book. From 2020 through 2022, substantive portions of the book were drafted, including commentary on general leadership concepts such as the "acid test," the WDYWFY model, and the Goal Achievement Model. T2P asserts ownership over those leadership concepts in the cease & desist letters which are either jointly owned, or in the public domain. T2P filed a copyright Lennick asserted in a DMCA takedown that he believes covers those same concepts, when in fact the copyright does not contain any of the language above, and fraudulently claimed infringement. Lennick and T2P are trying to stifle Wachendorfer's new coaching venture after departing from working with T2P and are attempting to weaponize the copyright legal system to do so.

**FACTUAL BACKGROUND**

## A. Relationship of the Parties

On June 4, 2004, "Wachendorfer" became an employee of Lennick Aberman Group, LLC ("LAG"). *See* Dkt. No. 21 at ¶ 20. LAG later became T2P, and Wachendorfer eventually became a member of the Board of Directors of Inc. *Id*. at ¶¶ 20, 22. While employed at LAG, Wachendorfer signed the LAG Intellectual Property Agreement (the "LAG Agreement"), which assigned Wachendorfer's intellectual property interests in any and all "materials" created for LAG to LAG. *See Id*. at ¶ 21 Exhibit C. Simultaneously, the LAG Agreement, Wachendorfer irrevocably assigned to LAG all of his "rights, titles, and interest in and to" materials "created, developed, or contributed to on behalf of LAG." *See id*. Simultaneously, the LAG Agreement assigned Wachendorfer "a royalty-free, non-assignable license to use the LAG Property in unadulterated form for [Wachendorfer's] personal benefit upon termination" of his employment at LAG. *See id.* at ¶ 83.

## B. Timeline of Events

### 1. 2020 – Drafting the Book's Manuscript

In 2020, Wachendorfer, Lennick, or T2P held a registered a copyright on any of the underlying materials. During this time, both Wachendorfer and Lennick were employed by T2P. Wachendorfer served as Chief Operating Officer (COO), and Lennick served as Chief Executive Officer (CEO).

Notwithstanding their corporate roles, Wachendorfer and Lennick, in their individual capacities, began to develop the manuscript for the Book. Meetings regarding

the Book were deliberately scheduled outside of normal work hours, including Wednesdays and Fridays, between the hours of 6:00 AM and 8:00 AM Mountain Time to ensure that the meetings did not interfere with Wachendorfer or Lennick's employment responsibilities at T2P. (Dkt. No. 21 at ¶ 30.) Throughout 2020 and into 2022, substantive portions of the Book were drafted. Included among these chapters is the "Achieving Goals" chapter, which incorporates the "acid test," the WDYWFY model, and the Goal Achievement Model, all of which Lennick and T2P now claim ownership of, when in reality these are concepts from the public domain that Lennick or T2P have any ownership rights in. Early drafts of this chapter date back to June 5, 2020, and December 12, 2020.

### 2. 2022 – Final Manuscript Delivered to Publisher

Under the Publishing Agreement executed with John Wiley & Sons (the "Publisher"), final versions of the manuscript were submitted to the publisher on September 15, 2022. Dkt. No. 21 and Exhibit A.

### 3. 2023 – Publication of the Book

The Book was published in March 2023.

### 4. 2024 – Copyright Filing

On January 8, 2024, Wachendorfer gave notice of his resignation from T2P to Lennick. Dkt. No. 21 at ¶ 22, Dkt. No. 28 at p. 5

On March 4, 2024, T2P filed a copyright registration for their Work titled "Leadership Program," identified as Registration No. TX0009386834. The certificate of registration lists the date of creation as 2022, and October 11, 2022, as the date of publication for the Work, less than a month after the final manuscript was delivered to the Publisher.

On or about November 2, 2024, Wachendorfer, in his individual capacity, recorded a TEDx Talk at Greenhouse Road in Houston, Texas titled "How to Set Goals You Will Actually Accomplish" (the "TEDx Talk"). Wachendorfer made no mention or reference to T2P in the TEDx Talk. The talk was given by Wachendorfer in his individual capacity, not affiliated with any entity.

### 5. 2025 – Wachendorfer's Resignation and Present Litigation

On February 7, 2025, Wachendorfer's TEDx Talk was posted to the TEDx channel and TEDx YouTube channel.

On February 11, 2025, Lennick sent a takedown notice under the Digital Millennium Copyright Act (DMCA) ("DMCA Takedown") to TEDx, concerning Wachendorfer's recorded TEDx talk entitled "*How to Set Goals You'll Actually Accomplish*" (the "TEDx Talk"). Dkt. No. 21 at ¶¶ 62-65. In the DMCA Takedown, Defendant stated that: "The work being infringed is Think2Perform's proprietary model, What Do You Want For Yourself (W.D.Y.W.F.Y.) a five-step goal achievement process. Step 2 of the goal achievement process is to put the goal to the acid test – two affordability questions to confirm whether one can afford the sacrifice for the goal –

owned by Think2Perform and registered under U.S. Copyright Registration No.

TX0009386834 for 'Leadership Program' before the U.S. Copyright Office effective date

October 11, 2022." *Id*.

## LEGAL STANDARD

To survive a motion to dismiss for failure to state a claim pursuant to FRCP 12(b)(6),

a complaint must contain sufficient facts, accepted as true, to "state a claim to relief that is

plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic*

*Corp. v. Twombly*, 550 U.S. 544, 570 (2007)). A plaintiff must furnish "more than labels

and conclusions" or "a formulaic recitation of the elements of a cause of action." *Twombly*,

550 U.S. at 555. Instead, the complaint's factual allegations "must be enough to raise a

right to relief *above the speculative level.*" *Id.* (emphasis added) (citations omitted); see

*also Ashcroft*, 556 U.S at 678 (noting that courts "are not bound to accept as true a legal

conclusion couched as a factual allegation"). The plausibility standard "asks for more than

a sheer possibility that a defendant has acted unlawfully" or "more than a mere possibility

of misconduct." *Wilson v. Arkansas Dep't of Hum. Servs.*, 850 F.3d 368, 371 (8th Cir.

2017) (quoting *Iqbal*, 556 U.S. at 678-79).

Challenges to Article III of the United States Constitution's constitutional standing

implicate the court's subject matter jurisdiction and are analyzed under FRCP 12(b)(1).

*Mekhail v. N. Mem'l Health Care*, 726 F. Supp. 3d 916, 931 (D. Minn. 2024). "[I]f a

plaintiff lacks standing, the district court has no subject matter jurisdiction." *Faibisch v.*

*Univ. of Minn.,* 304 F.3d 797, 801 (8th Cir. 2002). "Whether a plaintiff has standing to sue 'is the threshold question' in every federal case, determining the power of the court to entertain the suit." *McClain v. Am. Econ. Ins. Co.,* 424 F.3d 728, 731 (8th Cir. 2005), *citing Steger v. Franco, Inc.,* 228 F.3d 889, 892 (8th Cir. 2000).

Additionally, both Article III and the federal Declaratory Judgment Act require federal courts acting under their authority to find an actual controversy before proceeding, and state law causes of action are typically subject to the same requirements. *See MedImmune, Inc. v. Genentech, Inc.,* 549 U.S. 118 (2007). According to the Supreme Court, whether a particular dispute rises to this level turns on "whether the facts alleged, under all the circumstances, show that there is a substantial controversy . . . of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *Id.* at 127 (quoting *Md. Cas. Co. v. Pac. Coal & Oil Co.,* 312 U.S. 270, 273 (1941)).

This case presents two interrelated issues that are ripe for the Court's intervention. First, there is a clear dispute over the scope of the copyright asserted by T2P and whether Plaintiff's use of the content—developed jointly with Defendant Lennick and including elements from the public domain—constitutes infringement. Lennick's role as a co-author, and potentially as the individual who filed the registration, is central to that inquiry and directly informs the boundaries of what rights, if any, T2P can lawfully assert going forward. Second, the case involves Defendants' misuse of the DMCA process, including Lennick sending a DMCA takedown of Wachendorfer's TEDx Talk issued while T2P had been administratively dissolved. As a result, Plaintiff suffered reputational and business

harm from the removal of non-infringing content. Lastly, Defendants have sent multiple cease and desist letters claiming copyright ownership over material that is the subject of the Book co-authored by Wachendorfer and Lennick which includes several items that are in the public domain and unable to be "owned" by either used and certainly not able to be weaponized against the Plaintiff. These issues—copyright scope and the wrongful enforcement of rights that do not exist—lie at the heart of this dispute.

## LEGAL ARGUMENT

### A. Scope of the '834 Registration

Lennick and Wachendorfer co-authored the Book outside the scope of their employment with T2P. Following publication of the Book, and after discussions between the Parties were engaged regarding ownership of materials, T2P registered a copyright for a screenshot of their website and falsely asserted the copyright covers content coauthored in the Book. Now Lennick asserts that T2P has the exclusive right to use the material and is attempting to hide behind T2P's corporate structure to avoid personal liability. U.S. Copyright Registration No. TX0009386834 (the "834 registration"), along with its deposit, is attached to the FAC. Dkt. No. 21 and Exhibit B. "[T]he scope of the copyright is limited by the deposit copy." *Willia Dean Parker v. Sarah Hinton, No*. 22-5348, 8-9 (6th Cir. Jan 24, 2023). Therefore, protected elements of a plaintiff's copyright must appear in the works deposit copy. *See Merrell v. Tice*, 104 U.S. 557, 561 (1881)

(explaining that deposit copies are necessary "to enable other authors to inspect them in order to ascertain precisely what was the subject of copyright").

Elements of the public domain, even those elements that are included as part of a larger body of work, are not eligible for copyright protection. The Supreme Court emphasizes that copyright protection in the selection, coordination, and arrangement of otherwise uncopyrightable elements is "thin" because the scope of the copyright is limited to *that particular selection* or arrangement. *See Feist Publications, Inc. v. Rural Tel. Servs., Inc.*, 499 U.S. 340, 349-51 (1991). Notably, a "subsequent [author] remains free to use [the public domain elements] to aid in preparing a competing work, so long as the competing work does not feature the same selection *and* arrangement." *Id* (emphasis added).

Plaintiffs do not dispute that Defendants may possess a valid copyright on what was submitted in the deposit; however, that protection does not encompass the sweeping rights Defendants assert. In fact, Defendants "ha[ve] not pointed to any authority that supports what it is attempting here — to register and sue on a version of a [copyright] that was created *after* the version that [Wachendorfer] allegedly copied." *Oskar Systems, LLC v. Club Speed, Inc.*, 745 F. Supp. 2d 1155, 1163 (C.D. Cal. 2010).

Defendants are attempting to claim exclusive ownership of work created prior to the creation date stated in the Work's registration, in addition to asserting rights in elements of the public domain. To be clear, nowhere in the Work's deposit does the phrase "acid

test," WDYWFY, Triangle of Influence, or any of the other material set forth in

Paragraph 51 of the FAC appear. Dkt. No. 21 at ¶ 51and Exhibit B. Instead, the Work's

deposit is a screenshot of a single page of Defendants' website. (*Id.*) Notably, none of the

actual materials for the "Leadership Program" were submitted or are a part of the '834

copyright registration.

**B.  Lennick Should Not Be Dismissed Because Lennick Has Personal Knowledge
of the Work, Co-Authored the Book, and had Direct Involvement in the
DMCA Action Taken.**

Lennick should not be dismissed and is a proper party in this action. The claims

against Lennick arise from his direct, personal actions and subjective knowledge of the

copyrighted Work at issue, his personal authorship over the content of the Book being

asserted against Wachendorfer via cease & desist letters and recent deliberate conduct

regarding the Work, not merely from his role as CEO of T2P, Defendants' contention that

"Lennick was clearly acting on behalf of Inc.," and that "he cannot be held personally

liable for any of the conduct alleged in the FAC" fundamentally mischaracterizes the

nature of the claims. Dkt. No. 28 at p. 11. Defendants contend the only way to hold

Lennick liable for any of the claims set forth in the FAC is to "pierce the corporate veil."

*Id*. However, the doctrine of veil piercing is relevant only where a party seeks to hold an

individual liable for the obligations of a corporate entity. *Ransom v. VFS, Inc.*, 918 F.

Supp. 2d 888 (D. Minn. 2013) ("[I]t is not necessary to pierce the corporate veil to hold a

corporate officer liable when there is no attempt to hold the corporate officer liable

'solely because of his status as a stockholder or officer of the corporation.' … Rather, in such situations, liability is individual and based on tortious conduct in which the corporate officer personally engaged.") Here, no such veil piercing is required because Lennick has personal, subjective knowledge regarding the creation, ownership, scope, and enforcement of the materials in the Work.

Lennick asserted both a copyright registration, U.S. Reg. No. '8634 by way of the TEDx Talk DMCA action, and copyright infringement via cease-and-desist letters, against Wachendorfer for content claimed to be owned by T2P that is contained in the Book, authored by Lennick and Wachendorfer personally. Wachendorfer seeks a Judgement from the Court that he is not infringing any copyrighted material.  The timeline of events and Lennick's subjective knowledge of the Book and contents of the Work, and Book are highly significant.  It is undisputed that Lennick and Wachendorfer collaborated as individuals to co-author the Book, beginning in 2020. The Book compiles well-known concepts, and ideas in the public domain, comments on those concepts and incorporates them into a larger framework. In fact, Lennick acknowledges this, stating the T2P WDYWFY model, which incorporates the "acid test," was not created by him. Instead, Lennick states, "My friend and mentor Roy Greer originated the WDYWFY model in the 1960s, and "[o]ver the last 60 years, thousands of people have used the WDYWFY model." Dkt. No. 21 at ¶ 53. So Lennick's assertion that the "acid test" is owned by T2P and Wachendorfer's mention of this test in the TEDx Talk was copyright infringement directly involves Lennick's personal knowledge of the fraudulent assertions

and statements that he made in the DMCA takedown that he initiated as an individual. Notably, numerous prior coaches, clients, former clients, and industry specialists unrelated to T2P have used the T2P WDYWFY model without any license or compensation paid to T2P. Dkt. No. 21 at ¶ 39.

Moreover, at no point during or after the authorship of the Book did Lennick obtain an assignment from Wachendorfer conferring any or all his ownership interest in the co-developed Book content to him or T2P. Nonetheless, without consulting Wachendorfer or obtaining an assignment from the Publisher, Lennick took it upon himself to step into his role as CEO of T2P and file a copyright on the underlying material in the Book after the Book was published, falsely identifying the author of the material as T2P. Absent a valid, executed assignment from Wachendorfer or the Publisher, T2P cannot reasonably believe that it has acquired exclusive copyright ownership over all of the materials in the book that are created by others. The copyright office requires a disclaimer of any material in the work that is not created by the author.

Further, Defendants' exclusive claim of ownership over specific concepts, such as the WDYWFY model and the "acid test", is particularly astounding given Lennick himself acknowledged that the WDYWFY model was developed by someone else more than six decades ago. Under the Copyright Act, a copyright cannot vest in a party who neither authored the material nor obtained a valid assignment from the true author. See 17 U.S.C. § 201(a).

Defendants' attempt to insulate Lennick from personal liability by invoking the corporate veil is without merit. That said, a court may pierce the corporate veil and hold an individual liable for the acts of a corporation if the corporation is used to accomplish a fraudulent purpose or if the individual is an "alter ego" of the corporation. See *Equity Tr. Co. Custodian ex rel. Eisenmenger IRA v. Cole*, 766 N.W.2d 334, 339 (Minn. Ct. App. 2009). Filing and enforcing copyright ownership in works Lennick subjectively knows T2P did not create "would frustrate the purpose of copyright registration and open the door to fraud." *Oskar Systems, LLC*, 745 F. Supp. 2d at 1155. Even assuming that the enforcement activity was performed in Lennick's capacity as a corporate officer, it is well established that corporate officers are individually liable for their own wrongful conduct. *See, e.g.*, *Rockney v. Blohorn*, 877 F.2d 637, 642 (8th Cir. 1989) ("A corporate officer is personally liable for his own torts, even though committed while acting for the corporation."); *United States v. Martin*, 337 F.2d 171, 175 (8th Cir. 1964) ("An officer cannot shield himself from liability for personal wrongdoing merely because he acted in his corporate capacity.").

This is of particular significance since the DMCA Takedown was issued specifically in response to Wachendorfer's mention of the "acid test." The DMCA Takedown was signed by Lennick with actual knowledge of Wachendorfer's rights in the material. Given that both Wachendorfer and Lennick collaborated on the manuscript over a multi-year period and jointly signed the publishing agreement in their individual capacities, Wachendorfer is a co-author of the Work. As such, Wachendorfer retains

equal rights to use and reproduce the content he helped create and certainly has the right to use anything the Court will deem part of the public domain and not owned by any third party.

Moreover, Lennick is undoubtedly aware that neither he nor T2P owns exclusive rights over the term "acid test," yet Lennick personally participated in enforcement efforts against Wachendorfer for use of the "acid test" which, by the way, is also not a subject of the copyright asserted. In each of the cease-and-desist letters, Lennick made multiple references to the LAG Agreement regarding Wachendorfer's intellectual property rights. The LAG Agreement contains clear language assigning Wachendorfer the right to use any and all of the LAG Property for his own personal benefit after his employment ends. Dkt. No. 21 at ¶ 83 and Exhibit C. Thus, because Lennick has so eagerly referenced the LAG Agreement to enforce against Wachendorfer, Lennick certainly is aware of Wachendorfer's right to use any of the LAG Property, which *even if* T2P owned the exclusive right to, would include the "acid test."

Thus, the complaint sets forth the factual allegations demonstrating Lennick's direct personal involvement, including the timeline of the co-authorship, the content of the Book, the content of the publishing agreement, the subsequent copyright registration, and the issuance of takedown notices that improperly asserted exclusive rights over material in the public domain or jointly authored. These allegations provide ample notice of the basis for Lennick's individual liability and more than satisfy the plausibility standard under Rule 8 and Rule 12(b)(6). Because Lennick's personal knowledge and

conduct are at the heart of this dispute, dismissal would improperly insulate him from accountability for actions he took as an individual, co-author and as CEO of T2P.

### C. Claims 1 and 2 (Declaratory Judgement) Should Not Be Dismissed.

"Under Article III of the United States Constitution, the jurisdiction of federal courts extends only to actual cases and controversies." *HSK, LLC v. United States Olympic Comm.,* 248 F. Supp. 3d 938, 943 (D. Minn. 2017). The Declaratory Judgment Act limits the issuance of a declaratory judgment to cases involving an "actual controversy", in which a party has a real and reasonable apprehension that they will be subject to liability if they continue the conduct. *See id.*; *Maytag Corp. v. International Union*, 687 F.3d 1076, 1081 (8th Cir. 2012) ("There must be a concrete dispute between parties having adverse legal interests[.]"). *See also MedImmune, Inc.,* 549 U.S. at 127 ("[T]he question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment.").

Defendants overlook the substantial body of precedent establishing that allegations of copyright infringement and repeated enforcement threats like those here create a justiciable case or controversy. "An action for declaratory judgment involving the validity or infringement of a copyright presents a justiciable case or controversy if the defendant's actions have caused the declaratory judgment plaintiff to harbor a real and reasonable apprehension that he will be subject to liability if he continues to manufacture

20

his product." *Xerox Corp. v. Apple Computer, Inc.*, 734 F. Supp. 1542, 1546 (N.D. Cal. 1990); *see Hal Roach Studios, Inc. v. Richard Feiner & Co.*, 862 F.2d 1542, 1555–56 (9th Cir. 1989) (stating "an actual controversy exists if the defendants' actions have caused the plaintiff to … harbor 'a real and reasonable apprehension that [it] will be subject to liability if [it] continues' the allegedly infringing conduct."); *Hyphy Music, Inc. v. Sena,* No. 1:21-cv-00216-JLT-HBK, 2025 U.S. Dist. LEXIS 49438 (E.D. Cal. Mar. 18, 2025) (providing that a DMCA takedown notice and the resulting notification to the alleged infringer "sufficiently alleges the requisite 'real and reasonable apprehension,' and thus an actual controversy."); *Diagnostic Unit Inmate Council v. Motion Picture Association of America*, 953 F.2d 376, 378 (8th Cir. 1992) ("Generally, there is an actual controversy for purposes of declaratory judgment…where a defendant holding the [copyright] has either expressly or impliedly charged the plaintiff with infringement").

Here, Defendants have engaged in a pattern of unambiguous enforcement conduct that far surpasses the minimum threshold requirement of the existence of an "actual controversy." As detailed in the FAC, Defendants have sent multiple cease-and-desist letters and issued a DMCA takedown notice, all premised on either allegations that Wachendorfer's use of the "acid test" and related concepts infringes T2P's Work, or allegations by T2P that other material from the Book is owned by T2P and has been infringed by Plaintiff. Dkt. No. 21 Exhibits C, D. These repeated assertions of infringement have created uncertainty regarding Plaintiff's ability to continue its professional activities without fear of further attempted enforcement.

Again, Wachendorfer is a co-author of the Book that includes the "acid test," and Wachendorfer holds an assignment, reserved under the LAG Agreement, granting him the right to use the intellectual property for his own personal benefit following the termination of his relationship with the company. Defendants' enforcement activities purport to negate these rights. Further, the phrase "acid test" itself is a widely used, generic concept that exists in the public domain, yet Defendants have asserted exclusive rights over this phrase through their enforcement activities. Accordingly, Plaintiff is entitled to seek a declaration from this Court to clarify the scope of T2P's Work, the scope of any copyright ownership in the material in the Book, and whether the Plaintiff has infringed any legitimate copyright. Further Plaintiff seeks calcification on the extent of Plaintiff's rights in connection with the material he created so that he can exercise his legitimate rights without further threat of enforcement or reputational harm. Absent such a declaration, T2P is free to continue to engage in wrongful and vague enforcement activities such as the October 21, 2024, cease-and-desist letters wherein T2P asserted that Plaintiff infringed T2P's intellectual property, "including Think2Perform's copyrighted work" without referencing a copyright registration or further information identifying what Wachendorfer was allegedly infringing. Dkt. No. 21 Exhibit D. Even more concerning is that, absent such a declaration, T2P will continue to hold itself out as the exclusive owner of public domain materials by threatening enforcement actions based on rights it knows it does not have. A genuine controversy exists here because T2P is asserting exclusive ownership over materials that are plainly within the public domain,

including, for example, the WDYWFY model that was developed more than sixty years before the purported creation date provided in T2P's copyright application.

Permitting Defendants to engage in reckless enforcement activities including issuing DMCA takedown notices to third-party platforms and then to escape case-or-controversy jurisdiction by withdrawing the takedown notice after damage was already done to Plaintiff, would only invite further improper enforcement activities. Similarly, by claiming that their copyright registration effectively encompasses any material referenced in the book—including elements of the public domain—Defendants have created a situation in which nothing restrains Defendants from accusing virtually any future expression by Plaintiffs of infringement. Consistent with the purposes of the Declaratory Judgement Act, Plaintiffs' claims are intended to establish clear parameters around the scope of Defendants' rights for the sake of removing the otherwise persistent cloud hanging over Plaintiffs' efforts to advance their business and legal right to utilize content not within the scope of Defendants' rights, Defendants have asserted what amounts to a vague and illegitimate monopoly over vast swaths of professional vocabulary and educational content in the business and leadership field. Declaratory relief is therefore essential not only to resolve the immediate controversy but also to prevent an open-ended enforcement posture that would undermine fair competition and create continuing uncertainty incompatible with the purpose of the Copyright Act.

**D. Claims 4 and 5 (Tortious Interference) Should Not Be Dismissed.**

Defendants' preemption argument regarding Plaintiffs' tortious interference claim

fails because it fundamentally misapprehends the basis of the claim. Defendants cite

*FurnitureDealer.net, Inc. v. Amazon.com, Inc.,* 2019 WL 3738622 (D. Minn. 2019) to

support the contention that DMCA claims are preempted by the Copyright Act.

The issue is not simply that the DMCA takedown notice or the cease-and-desist

letters in isolation amount to tortious interference. Rather, the core issue is that

Defendants have used their position to assert rights they do not possess. By doing so,

Lennick seeks to shield himself behind the corporate entity while actively interfering with

Wachendorfer's ability to conduct his business free from the constant threat of meritless

enforcement and litigation. This claim is due to the prior relationship of the parties and

work together on the Book and then drastic turn of the relationship and representation of

the nature of the scope of rights of T2P and efforts made against Wachendorfer to squash

his ability to successfully have a new endeavor. The actions of the Defendants are

deliberate and pointed, especially in light of the timing of the filing of the '6834

copyright that was asserted, without any basis to do so, in an effort to stop the viral

traction Wachendorfer's TEDx Talk was gaining after Wachendorfer no longer worked

for T2P.

Courts have regularly found that abusing the DMCA takedown process amounts to

tortious interference. *See MFB Fertility, Inc. v. Action Care Mobile Veterinary Clinic,*

*LLC,* 730 F. Supp. 3d 740, 755 (N.D. Ill. 2024) ("By abusing the takedown process – that

is, filing a DMCA notice without a good faith belief that Action Care infringed on MFB's Copyrighted Works – MFB exposed its intent.") Courts have routinely held that, "when a plaintiff plausibly alleges that no reasonable copyright holder could have believed that material infringed a copyright, it is permissible to infer that the copyright holder did not subjectively believe the allegation of infringement in a DMCA takedown request." *Imposter Pastor Movie, LLC v. Oliver*, No. 5:24-CV-00115-M, 2025 U.S. Dist., LEXIS 47424 (E.D.N.C. Mar. 14, 2025).

Not only did Defendants submit the DMCA Takedown without a good faith belief that Wachendorfer's actions infringed their copyright, but Defendants also have actual knowledge that they have no exclusive rights—copyright, trademark, or otherwise—in the term the "acid test." The copyright asserted did not state the term "acid test." Again, the term "acid test" as used in commonplace English is not in reference to a specific test or tied to any specific industry. Instead, it is simply an expression referring to the strength and consistency of one's decision-making. At a minimum nothing in the copyright asserted, that Lennick testified knowledge of, was stated in Wachendorfer's talk, the copyright is a website page listing- not a speech.

Lennick is undoubtedly aware that his actions are also in direct contradiction to the LAG Agreement. While Defendants frequently cite to the LAG Agreement to support their position that Wachendorfer assigned all his rights to the IP created while employed at LAG (and T2P), Defendant's conveniently omit the language assigning Wachendorfer the right to use all the intellectual property after termination.

Needless to say, T2P did not convey any rights to Lennick to use the material in the Book because T2P, nor its predecessor LAG, had a copyright registration on any of the material in the Work.

### E.  T2P Exam Services Can Be Dismissed Without Prejudice.

Plaintiffs agree that Defendant Think2Perform Exam Services Co. ("Exam Services") can be dismissed without prejudice in view of Defendants' representations. Exam Services was initially named as a defendant due to uncertainty regarding the proper legal ownership of the asserted Work, U.S. Copyright Reg. No. TX0009386834 (the "Work").

Courts have recognized that corporate mergers and dissolutions can transfer copyright ownership "by operation of law," and have noted the possibility that a shareholder may succeed to the ownership of a dissolved corporation's copyrights under similar principles. See *generally Taylor Corp. v. Four Seasons Greetings, LLC*, 403 F.3d 958 (8th Cir. 2005). According to records from the Minnesota Secretary of State, Defendant Think2Perform, Inc. ("T2P") was administratively dissolved on January 8, 2025. Despite the dissolution, on February 11, 2025, T2P issued a DMCA takedown notice targeting Plaintiffs' TEDx Talk and subsequently sent a cease-and-desist letter to Wachendorfer on March 7, 2025. Upon an initial investigation, public records indicated that Exam Services and T2P share the same Principal Executive Office Address and Registered Office Address - 706 2nd Avenue South, Suite 271, Minneapolis, Minnesota. Because of this, and since T2P had been dissolved for the period of time while these

26

enforcement actions occurred, Plaintiffs could not confirm who, if anyone, held ownership of the Work. However, following Plaintiff's First Amended Complaint ("FAC") filed May 27, 2025, Defendant acknowledges in their June 27, 2025, Partial Motion to Dismiss ("MTD") that T2P is the proper owner of the Work, and that Exam Services is a wholly owned subsidiary with no employees or funding. Accordingly, Plaintiffs acknowledge that Exam Services should be dismissed.

**CONCLUSION**

Lennick is properly joined in this action and should not be dismissed. Lennick's decision to weaponize the DMCA process to block a former colleague and now competitor from using jointly authored material, or material in the public domain, is central to this case. Lennick filed a copyright registration in T2P's name for material that he improperly claims is from the Book, yet the scope of which does not include any content in the Book, and has not been copied by Wachendorfer. Lennick also improperly seeks to block Wachendorfer from using any of the authored material in the Book, even though they wrote the book together, and much of the content was either jointly created or drawn from the public domain. Only after Wachendorfer resigned from T2P in January 2024 did Lennick, without a license or assignment from Wachendorfer, file a copyright registration for something unrelated to his assertions of what is owned by T2P by virtue of his written work in the Book, and yet use that same copyright to make a fraudulent take down request under the DMCA. This filing came after licensing discussions had

already begun—and was followed by enforcement threats aimed directly at
Wachendorfer in efforts to suppress his business. Court intervention is necessary to
clarify the scope of the copyright at issue. Without judicial limitation, Lennick and T2P
are likely to continue asserting exclusive rights over materials that Wachendorfer has the
right to use, and even over content that exists plainly in the public domain.

For the reasons set forth herein, Plaintiffs respectfully request that the Court deny
Defendants' Partial Motion to Dismiss.

DATED this 18th day of July 2025. Respectfully submitted,

TM SULLIVAN PLLC

*/s/ Timothy M. Sullivan*
Timothy M. Sullivan
*tim@tmsull.com*
Minnesota Attorney Reg. No. 0391528
(773)919-8667
225 South Sixth Street, Suite 3900
Minneapolis, MN 55402

STUDIOIP LAW, LLC
Jessie L. Pellant *pro hac vice*
*jpellant@studioiplaw.com*
Colorado Attorney Reg. No. 42096
Vincent Merenda *pro hac vice*
*vmerenda@studioiplaw.com*
Colorado Attorney Reg. No. 60774
3000 Lawrence Street
Denver, CO 80205

*Attorneys for Plaintiffs*