UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

---

CHARLES F. WACHENDORFER
CONSULTING GROUP LLC (d/b/a
DECISION REFLEX CONSULTING) and
CHARLES WACHENDORFER,

Case No. 25-CV-1298 (PJS/EMB)

Plaintiffs,

v.                                                              ORDER

THINK2PERFORM EXAM SERVICES
CO. (f/k/a THINK2PERFORM, INC.);
DOUG LENNICK; and
THINK2PERFORM, INC.,

Defendants.

---

Jessie L. Pellant, Timothy M. Sullivan, and Vincent Merenda, STUDIOIP LAW, for plaintiffs.

Melanie A. Miller and Heather L. Marx, COZEN O'CONNOR, for defendants.

Plaintiff Charles Wachendorfer and defendant Doug Lennick are former colleagues who both specialize in leadership and business consulting. In this lawsuit, Wachendorfer and his company (collectively "Wachendorfer") allege that Lennick and his companies (collectively "Lennick") are using meritless threats of copyright infringement to impede Wachendorfer's new business.

This matter is before the Court on Lennick's partial motion to dismiss. Lennick argues that Counts I and II should be dismissed because the Court lacks subject-matter jurisdiction, that Counts IV and V should be dismissed because they are preempted, and

that Count III should be dismissed insofar as it seeks to impose liability against Lennick

in his individual capacity.  For the reasons explained below, Lennick's motion is granted

except as to Count III.

## I.  BACKGROUND

### A.  Business History

Wachendorfer joined Think2Perform, Inc. (formerly Lennick Aberman Group,

LLC ("LAG")) as an employee in 2004.  First Amended Complaint ("FAC") ¶ 20.

Wachendorfer signed an intellectual-property agreement ("the LAG Agreement") that

assigned to LAG all "rights, titles, and interest in" materials he created for LAG,

including those that incorporated materials that Wachendorfer had created before

joining LAG.  Ex. C ¶ 2.  The LAG Agreement also gave Wachendorfer a "royalty-free,

non-assignable license to use the LAG Property in unadulterated form for [his] personal

benefit" when his employment at Think2Perform ended.  *Id.* ¶ 4.  Wachendorfer

eventually became Think2Perform's Chief Operating Officer and joined its board in

2013.  Ex. H at Ex. B; Ex. J ¶ 4.

In 2020, Wachendorfer and Lennick decided to co-write a book on leadership

("the Book") in their personal capacities.  FAC ¶ 27; Pl.'s Mem. at 6.  The two financed

the Book themselves and wrote it on their own time.  FAC ¶¶ 29, 33.  The Book

discussed leadership concepts including "What Do You Want for Yourself"

("WDYWFY") and the "acid test" (a process for ascertaining whether a goal is achievable). *Id.* ¶¶ 28; Pl.'s Mem. at 6. Wachendorfer and Lennick assigned the copyright covering the Book to their publisher. FAC ¶¶ 27, 34–38; Ex. A. The Book was published in 2023. Pl.'s Mem. at 6.

Wachendorfer resigned from Think2Perform in January 2024.[1] After his departure, Wachendorfer founded Charles F. Wachendorfer Consulting Group LLC (d/b/a Decision Reflex). FAC ¶ 24. Decision Reflex offers leadership and business-development services in competition with Think2Perform. *Id.*

### B. Copyright Disputes

After leaving Think2Perform, Wachendorfer unsuccessfully attempted to negotiate a license permitting Decision Reflex to use certain intellectual property owned by Think2Perform. *Id.* ¶ 25. Wachendorfer contends that, sometime during those negotiations, Lennick "abruptly shifted course" from being cordial to "issu[ing] a series of meritless enforcement actions." Pl.'s Mem. at 7. Those allegedly meritless enforcement actions are the subject of this lawsuit.

One enforcement action related to a PowerPoint presentation that Wachendorfer created. On October 21, 2024, Lennick sent Wachendorfer a cease-and-desist letter

---

[1]The FAC alleges that Wachendorfer resigned in January 2025, *see* FAC ¶ 23, but this is a typographical error. *See* Ex. J ¶ 5 (Wachendorfer identifying the date of his resignation as January 8, 2024).

warning that the presentation infringed Think2Perform's copyrighted work, including "underlying copyrighted material" from the Book.  Ex. D.

A second enforcement action related to a TEDx talk entitled "How to Set Goals You'll Actually Accomplish" that Wachendorfer recorded on November 2, 2024.  FAC ¶ 62.  Wachendorfer gave the talk in his personal capacity and discussed leadership principles such as the acid test.  *Id.* ¶ 63.  TEDx posted the talk to its website and YouTube channel in early February 2025.  *Id.* ¶ 64.

Days after TEDx posted the talk, Lennick sent TEDx a notification pursuant to the Digital Millennium Copyright Act ("DMCA"), 17 U.S.C. § 512, claiming that the video of the talk was infringing.[2]  *Id.* ¶ 65; Ex. E.  Lennick, who is not a lawyer, sent the notice without seeking the advice of counsel.  *See* Hearing Tr. at 11:19–14:12; Ex. E.  The notice explained that Wachendorfer's TEDx talk infringed Think2Perform's "proprietary model"—that is, the five-step WDYWFY process (step two of which is the acid test).  FAC ¶¶ 65–66; Ex. E.  According to the notice, WDYWFY and the acid test are concepts "owned by Think2Perform" and protected by U.S. Copyright Registration No. TX0009386834 ("the '834 copyright").  *Id.* ¶ 66; Ex. E.  The '834 copyright covers Think2Perform's "Leadership Program," Ex. B, which is described on Think2Perform's

---

[2]The DMCA is a 1998 amendment to the Copyright Act, 17 U.S.C. § 101 *et seq.*

website.  After receiving the notice, TEDx removed the video of Wachendorfer's talk, which, at that point, had been viewed 31,000 times.  FAC ¶ 67.

Wachendorfer submitted a counter-notice to TEDx insisting that his talk did not infringe the '834 copyright, and he also asked Lennick to instruct TEDx to re-post the talk.  *Id.* ¶¶ 75–76; Exs. F, G.  Lennick initially resisted.  Ex. H.  After further communication with Wachendorfer, however, Lennick agreed to ask TEDx to re-post the video, but also asked Wachendorfer to remove all mention of the term "acid test."  FAC ¶ 80.  Wachendorfer declined to do so, and TEDx ultimately re-posted the original video.  FAC ¶ 81.

Wachendorfer filed this lawsuit on April 7, 2025, claiming that the takedown notice that Lennick sent to TEDx was a material misrepresentation under the DMCA.  ECF No. 1.  Wachendorfer also claims that, when Lennick sent the TEDx takedown notice, Lennick tortiously interfered with economic advantage and contract.  Finally, Wachendorfer asks the Court to declare that he did not infringe the '834 copyright and to precisely define the scope of the "Leadership Program" that is protected by that copyright.

## II.  ANALYSIS

### *A.  Legal Standard*

Lennick moves to dismiss some counts of the FAC under Fed. R. Civ. P. 12(b)(1) for lack of subject-matter jurisdiction and other counts under Fed. R. Civ. P. 12(b)(6) for failure to state a claim upon which relief can be granted.

As for Rule 12(b)(1):  "Federal courts are courts of limited jurisdiction, possessing only that power authorized by Constitution and statute."  *Gunn v. Minton*, 568 U.S. 251, 256 (2013) (citation modified).  As a result, subject-matter jurisdiction "is a threshold requirement," and courts must assure themselves that they have subject-matter jurisdiction before ruling on any other matters.  *Turner v. Armontrout*, 922 F.2d 492, 493 (8th Cir. 1991) (citing *Kronholm v. FDIC*, 915 F.2d 1171, 1174 (8th Cir. 1990)).  Wachendorfer has "the burden of proof that jurisdiction does in fact exist" over his claims.  *Osborn v. United States*, 918 F.2d 724, 730 (8th Cir. 1990) (quotation omitted).

A defendant may raise two types of challenges to subject-matter jurisdiction:  facial or factual.  *Id.* at 729 n.6.  In addressing a facial challenge, a court limits itself to the four corners of the complaint, and "all of the factual allegations concerning jurisdiction are presumed to be true . . . ."  *Titus v. Sullivan*, 4 F.3d 590, 593 (8th Cir. 1993) (citation omitted).  In addressing a factual attack, a court may "consider[] matters outside the pleadings, and the non-moving party does not have the benefit of 12(b)(6) safeguards."

*Davis v. Anthony, Inc.*, 886 F.3d 674, 679 (8th Cir. 2018) (quoting *Osborn*, 918 F.2d at 729 n.6).

As for Rule 12(b)(6):  In reviewing a motion to dismiss under Fed. R. Civ. P. 12(b)(6), a court must accept as true all of the factual allegations in the complaint and draw all reasonable inferences in the plaintiff's favor.  *Aten v. Scottsdale Ins. Co.*, 511 F.3d 818, 820 (8th Cir. 2008).  Although the factual allegations in the complaint need not be detailed, they must be sufficient to "raise a right to relief above the speculative level." *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007).  Ordinarily, if the parties present, and the court considers, matters outside of the pleadings, the motion must be treated as a motion for summary judgment.  Fed. R. Civ. P. 12(d).  But the Court may consider materials that are necessarily embraced by the complaint, as well as any exhibits attached to the complaint, without converting the motion into one for summary judgment.  *Mattes v. ABC Plastics, Inc.*, 323 F.3d 695, 697 n.4 (8th Cir. 2003).

### B.  Declaratory Judgment Claims

Wachendorfer seeks a declaratory judgment that neither his TEDx talk nor PowerPoint infringe any copyright (Count I) and a declaratory judgment to clarify what, exactly, the '834 copyright protects (Count II).  Lennick moves to dismiss both counts for lack of jurisdiction, arguing that neither claim is ripe for purposes of Article III and neither presents an "actual controversy" for purposes of the Declaratory Judgment Act.

28 U.S.C. § 2201(a).  Lennick's jurisdictional challenge is facial, and thus, as he recognizes, the Court must accept as true all of the facts pleaded in Wachendorfer's complaint.  Def.'s Mem. at 10 n.2.

Article III's requirement that a controversy be "ripe" is jurisdictional, while the Declaratory Judgment Act's requirement that a controversy be "actual" is not, but the two requirements are identical in substance.  *See Steffel v. Thompson*, 415 U.S. 452, 458 (1974).  A court must ask "whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genetech, Inc.*, 549 U.S. 118, 127 (2007) (quotation and footnote omitted).  A declaratory-judgment action can be ripe even "if no injury has yet occurred," as long as the anticipated injury is "certainly impending."  *Pub. Water Supply Dist. No. 8 of Clay Cnty. v. City of Kearney*, 401 F.3d 930, 932 (8th Cir. 2005) (quotation and citation omitted).  "Whether a case is ripe depends on the state of the case at the time of review, not at the time of filing."  *Id.* (citations omitted).

Copyright protections extend to tangible expressions of ideas, not to the ideas themselves.  17 U.S.C. § 102.  To be infringing, an accused work must be "substantially similar" to a copyrighted work "in both ideas and expression."  *Hartman v. Hallmark Cards, Inc.*, 833 F.2d 117, 120 (8th Cir. 1987) (citation omitted).  A plaintiff seeking a

declaratory judgment that a work does not infringe another's copyright must have "a real and reasonable apprehension that he will be subject to liability if he continues the allegedly infringing conduct." *Amaretto Ranch Breedables v. Ozimals Inc.*, 907 F. Supp. 2d 1080, 1085 (N.D. Cal. 2012) (citation modified).

Wachendorfer's declaratory-judgment claims must be dismissed for lack of jurisdiction because the FAC does not establish that he has a "real and reasonable apprehension" that he will be found liable for copyright infringement if his TEDx talk continues to be available online or if he continues to use his PowerPoint.

As for the TEDx talk:  The DMCA protects online-service providers from liability for hosting material that infringes a copyright.  *See generally* 17 U.S.C. § 512.  The DMCA also provides a vehicle for copyright owners to ask online-service providers to remove infringing content, known as a takedown notice.  *See* § 512(c)(3).  Finally, the DMCA provides a remedy for those who are injured by a false takedown notice that causes an online-service provider to remove non-infringing content.  *See* § 512(f).

Under many circumstances, the fact that someone issued a false takedown notice to an online-service provider would create an "actual controversy" between that person and the creator of the falsely accused work.  Here, though, after consulting with counsel, Lennick has clearly and publicly repudiated any claim that Wachendorfer's TEDx talk infringes the '834 copyright.  Hearing Tr. at 11:19–14:12.  At Wachendorfer's request, Lennick also asked TEDx to re-post the video of the talk.  FAC ¶ 80.  Having told a

federal judge that he does *not* claim infringement, and having asked that the TEDx video be re-posted on the Internet, Lennick is in no position to sue Wachendorfer for copyright infringement.[3]  If Wachendorfer fears such a claim, that fear is not reasonable.  *Compare U.S. Water Servs., Inc. v. Chem Treat, Inc.*, 794 F.3d 966, 976 (8th Cir. 2015) (exercising jurisdiction over a declaratory-judgment claim in a patent case when an infringement suit was "the next logical, if not inevitable, step" (quotation omitted)).

As for the PowerPoint:  In his brief and during oral argument before the Court, Lennick clearly and publicly agreed that Wachendorfer's mere use of *ideas* such as WDYWFY and the acid test does not violate any copyright.  Lennick also clearly and publicly stated that the PowerPoint does *not* infringe any copyright.  Hearing Tr. at 3:21–4:4, 14:4–8, 33:2–11.  In other words, Wachendorfer can continue to use the PowerPoint, and he can mention, explain, and provide opinions about WDYWFY and the acid test.  It seems extremely unlikely that Lennick will threaten a future copyright-infringement claim, given the concessions that he made before this Court, and given that the copyright covering the Book—in which the concepts of WDYWFY and the acid test are described—is owned by the *publisher*, not Lennick.  *See* Ex. A.

---

[3]Wachendorfer's counsel suggested at oral argument that the voluntary-cessation exception to *mootness* should apply to save his claims from being deemed *unripe*. Hearing Tr. at 40:5–19.  But "[b]ecause voluntary cessation analysis contemplates prior conduct, it can only apply to mootness analysis[,]" not to ripeness analysis.  *See Poor Bear v. Cnty. of Jackson*, No. 14-CV-5059, 2016 WL 3435181, at *4 (D.S.D. June 17, 2016).

Finally, Wachendorfer's request that the Court define, in the abstract, what the

'834 copyright does and does not cover is plainly unripe.  In light of Lennick's concession

that neither the TEDx talk nor the PowerPoint infringes the '834 copyright, there is no

actual controversy between the parties—no controversy about whether any work that

Wachendorfer has created or plans to create would infringe.  What Wachendorfer seeks

is an advisory opinion, and federal courts do not have authority to issue such opinions.

*See Pub. Water Supply Dist. No. 8 of Clay Cnty.*, 401 F.3d at 932.

For these reasons, Wachendorfer's declaratory-judgment claims—found in

Counts I and II of the FAC—are dismissed without prejudice for lack of jurisdiction.

### C.  Tortious Interference Claims

Wachendorfer also asserts claims of tortious interference with prospective

economic advantage (Count IV) and tortious interference with contract (Count V).

Lennick contends that both claims are preempted by the Copyright Act (specifically, the

DMCA), and therefore should be dismissed.

As Judge Eric Tostrud succinctly explained:

> There are three types of ordinary preemption.  (1) Express
> preemption occurs where a federal law explicitly prohibits or
> displaces state regulation in a given field.  (2) Conflict
> preemption, as its name implies, occurs where a state law
> directly conflicts with federal law.  Conflict preemption
> occurs when compliance with both federal and state laws is
> impossible, and when a state law stands as an obstacle to the
> accomplishment and execution of the full purposes and
> objectives of Congress.  (3) Finally, there is field preemption.

> Where Congress occupies an entire field . . . even complementary state regulation is impermissible. Field preemption reflects a congressional decision to foreclose any state regulation in the area, even if it is parallel to federal standards.

*Stursberg v. Morrison Sund PLLC*, 648 F. Supp. 3d 1075, 1086 (D. Minn. 2023) (quotations and citations omitted), *aff'd*, 112 F.4th 556 (8th Cir. 2024).

Here, Lennick relies upon express preemption. The Copyright Act "provides the exclusive source of protection for 'all legal and equitable rights that are equivalent to any of the exclusive rights within the general scope of copyright as specified by § 106' of the Copyright Act." *Davidson & Assocs. v. Jung*, 422 F.3d 630, 638 (8th Cir. 2005) (quoting 17 U.S.C. § 301(a)) (cleaned up). The DMCA, therefore, preempts claims that (1) are based upon works within the Copyright Act's purview and (2) seek to vindicate rights already protected by the Act. *See id.* In other words, if "the gravamen" of Wachendorfer's tortious-interference claims "is an alleged violation of [his] exclusive rights under the Copyright Act," the claims are preempted. *220 Laby's, Inc. v. Babaii*, No. CV-08-6125, 2008 WL 5158863, at *8 (C.D. Cal. Dec. 8, 2008).

Under the DMCA, the subject of a false takedown notice may recover "any damages, including costs and attorneys' fees," as long as the subject is "injured by such misrepresentation, as the result of the service provider relying upon such misrepresentation in removing or disabling access to the material." 17 U.S.C. § 512(f). Courts have held that tortious-interference claims predicated solely on false DMCA

-12-

takedown notices are preempted by the DMCA. *E.g.*, *FurnitureDealer.net, Inc. v. Amazon.com, Inc.*, No. 18-CV-0232 (JRT/HB), 2019 WL 3738622, at *4–5 (D. Minn. Aug. 8, 2019) (tortious interference with business advantage); *Hyphy Music, Inc. v. Sena*, No. 21-CV-0216, 2025 WL 842893, at *9 (E.D. Cal. Mar. 18, 2025) (tortious interference with contract). This Court agrees and concludes that Wachendorfer's tortious-interference claims are preempted by the DMCA.

First, the heart of Wachendorfer's claim for tortious interference with economic advantage is the false takedown notice. FAC ¶¶ 102–04. If the notice has caused injury to Wachendorfer—or if Wachendorfer suffers injury in the future caused by the notice—then Wachendorfer can seek damages and other remedies under the DMCA. *See FurnitureDealer.net*, 2019 WL 3738622, at *5. Wachendorfer avers that he will sustain more damages "should defendants continue to falsely allege to third parties" that Wachendorfer is infringing. FAC ¶¶ 103, 104. But if Lennick makes another false allegation of copyright infringement, Wachendorfer can sue him. If Lennick makes the allegation in a DMCA takedown notice, then Wachendorfer's claim will likely be preempted. But if Lennick makes the allegation in some other way, then Wachendorfer's claim will likely not be preempted—at least not by the DMCA. As things stand, the only plausible claim of tortious interference with economic advantage pleaded by Wachendorfer relies on the false takedown notice, and that claim is preempted by the DMCA.

-13-

The false takedown notice is likewise the gravamen of Wachendorfer's claim for tortious interference with contract. The FAC alleges that Lennick tortiously interfered with the LAG Agreement. FAC ¶ 106. The only alleged interference, however, is Lennick sending the false takedown notice, which resulted in the (temporary) removal of Wachendorfer's TEDx talk. *Id.* The DMCA claim therefore can vindicate any injury suffered by Wachendorfer as a result of the alleged tortious interference. *See Hyphy Grp.*, 2025 WL 842893, at *9 (holding that a claim that the defendants tortiously interfered with performance of a contract by making "an erroneous claim of copyright" was preempted by the DMCA).

In sum, because Wachendorfer does not seek to vindicate any right independent from those protected by the DMCA, his state-law claims are preempted.

### D. Misrepresentation Claim

Finally, Count III alleges that the defendants knew that the takedown notice sent to TEDx was false and thus they should be held liable under the DMCA. Lennick moves to dismiss this claim insofar as it seeks to hold him personally liable because (1) Lennick does not own the copyright cited in the takedown notice and (2) Lennick was acting as a corporate officer and agent when he sent the takedown notice. Both arguments are meritless.

First, Lennick argues that liability under the DMCA can only be imposed on the owner of a copyright who submits a false takedown notice alleging infringement of that

-14-

copyright.  Hearing Tr. at 18:3–19:18.[4]  Lennick points out that the copyright mentioned in the takedown notice—the '834 copyright—is owned by Think2Perform, not Lennick, and thus, Lennick says, he cannot be held liable.  *Id.*; Ex. B.

Lennick's argument is not supported by either the text of the DMCA or by the cases applying it.  The DMCA provides that "[a]ny person" who makes a material misrepresentation in a takedown notice may be held liable.  17 U.S.C. § 512(f).  True, § 512(f) claims are usually brought against owners of copyrights, *see, e.g.*, *Nat'l Acad. of Television Arts & Scis., Inc. v. Multimedia Sys. Design, Inc.*, 551 F. Supp. 3d 408, 432 (S.D.N.Y. 2021), but that is because copyright owners are most likely to issue false takedown notices.  After all, someone who does not own a copyright generally does not have much incentive to accuse someone else of infringing that copyright.  But courts have nevertheless sustained DMCA claims against individuals who, when issuing false takedown notices, claim to be acting on behalf of a corporate copyright owner with which they are not affiliated.  *See Bungie Inc. v. Minor*, No. 22-CV-0371, 2024 WL 965010, at *2 (W.D. Wash. Mar. 6, 2024).  The fact that Lennick did not own the '834 copyright does not shield him from personal liability for issuing a takedown notice that falsely claimed infringement of that copyright.

---

[4]Lennick made this argument in earnest for the first time at oral argument, but implied it in his briefing.  *E.g.*, Def.'s Reply at 10.

-15-

Nor is Lennick shielded from personal liability because he sent the takedown notice on behalf of Think2Perform. The DMCA does not abrogate the general principle that a corporate agent can be held personally liable for tortious conduct in which he engages on behalf of a corporation. *See* Restatement (Third) of Agency, § 7.01 cmt. c (A.L.I. 2006) (noting that a statute imposing a public-law penalty for violations will subject the agent to liability unless the imposition of such liability is inconsistent with the statute); *id.* cmt. d (noting that corporate officers and directors can be held personally liable for their own conduct without "pierc[ing] the corporate veil"). Lennick acknowledges as much. Def.'s Reply at 10 ("The standard is clear—to hold Lennick personally liable, the FAC needs to allege he personally engaged in tortious conduct.").

In *Asher Worldwide Enters. LLC v. Housewaresonly.com Inc.*, No. 12-CV-0568, 2013 WL 4516415, at *3 (N.D. Ill. Aug. 26, 2013), the court rejected a motion to dismiss Copyright Act claims that had been asserted against both a corporation and its officers, explaining that officers can be held personally liable if "they acted willfully and knowingly and personally participated in the infringing activities or used the corporation to carry out their own deliberate infringement" (citation omitted). Although *Asher* addressed alleged infringement rather than misrepresentation, there is no reason to treat the two differently under the Copyright Act.

Unlike in *Asher*, the FAC in this case contains no *explicit* allegations of Lennick's personal, willful, and knowing participation in the takedown notice. 2013 WL 4516415,

at *3–4; FAC ¶¶ 65–68, 93–100.  But the false takedown notice clearly was sent by

Lennick; his name and address appear on the top, he "signs" it on the bottom, and the

text of the notice makes it clear that he is the author.  Ex. E.  Moreover, the parties agree

that Lennick composed and sent the notice without first having the notice reviewed by

an attorney.  Hearing Tr. at 11:19–14:12; Ex. E; *cf.* FAC ¶ 72; *see also* Pl.'s Mem. at 18.

Under the circumstances, the Court finds that the FAC pleads a plausible DMCA

misrepresentation claim against Lennick.[5]

ORDER

Based on the foregoing, and on all of the files, records, and proceedings herein, IT

IS HEREBY ORDERED THAT:

1. Defendants' partial motion to dismiss plaintiffs' first amended complaint

   [ECF Nos. 25, 21] is GRANTED IN PART as follows:

   a. The motion is GRANTED as to all claims against

      Think2Perform Exam Services Co.

   b. The motion is GRANTED as to Counts I, II, IV, and V.

      i. Counts I and II are DISMISSED WITHOUT

         PREJUDICE for lack of jurisdiction.

---

[5]The Court grants defendants' unopposed motion to dismiss all claims against Think2Perform Exam Services Co.  Def.'s Mot. at ¶ 2; Def.'s Mem. at 14–16; Pl.'s Mem. at 26–27.

       ii.     Counts IV and V are DISMISSED WITH PREJUDICE.

2.     The motion is DENIED as to Count III.

Dated: March 26, 2026

/s/ Patrick J. Schiltz
Patrick J. Schiltz, Chief Judge
United States District Court